## (July 25, 1968)

█ Elizabeth Thompson, Appellant, v. State of New York, Respondent. (Claim No. 44594.)— Gibson, P. J. Appeal from a judgment of the Court of Claims which dismissed a claim for damages for personal injuries sustained in a State institution, upon a finding of the claimant's contributory negligence. Claimant-appellant's version of the case is that she and other inmates of Westfield State Farm, a reformatory for women, at about 11:15 A.M. on August 7, 1962, drank a quantity of duplicating fluid, one of the constituents of which was methyl alcohol, a poison; that thereafter the State breached its " duty of providing adequate medical attention for inmates of its penal institutions ", this in the language of appellant's brief, consistent with the allegations of the claim that the State was negligent in that " claimant was denied medical aid, treatment and attention throughout the seventh, eighth and ninth days of August, nineteen hundred and sixty-two "; with the result that claimant became permanently blind. There is no satisfactory indication that any of the reformatory staff were put on notice as to anything out of the ordinary until about 7:00 P.M. when claimant and four other women were interviewed concerning reports of their strange behavior in the cafeteria at the time of their evening meal. Claimant thereupon " repeatedly denied having anything to drink or any medication that would cause abnormal behavior." The other girls made similar denials, and the correction officer's report continues: " All the above girls spoke coherently, walked straight et cetera. It was felt that there was not enough evidence to hold them ". The following morning, the acting superintendent of the institution, upon hearing comments as to the girls' behavior the preceding day, caused a search of the dormitory to be made, with no result. At about 1:00 P.M. the Superintendent, upon hearing a rumor that the girls had considered drinking duplicating fluid, immediately had all of the girls sent to the institution's medical center. Claimant was at that time examined by Dr. Kessler who testified that although he told her that fluid of this nature could cause damage to the central nervous system or even blindness, she "emphatically denied" imbibing any of this or any other fluid; she denied dizziness, diarrhea, vertigo or vomiting and denied having been elated, excited or "high" or having, on the contrary, been depressed; her pupils were not dilated and he detected no alcoholic odor upon her breath. The doctor stated: "My evaluation at that time was that I didn't believe that she had taken the fluid, and that there was no evidence that I could find, either by questioning her psychologically or by signs which I could see with that amount of examination. I was especially concerned with her pupils and with her steadiness on her feet and vomiting and diarrhea, and then her personality state, whether she was elated or depressed. * * * I felt that I was using a good standard procedure of evaluating the case. And since I could get no history and could find no signs or symptoms, and could get no admission from her, even under pleading and imploring her,

I was doing what I thought was the standard practice used — what I thought was standard judgment in my decision that she was not — that they had not taken this fluid." Nevertheless, the Superintendent sent claimant to the clinic for observation and thence to Grasslands Hospital, where the correct diagnosis was made. It was not until August 10 that claimant admitted imbibing "one-third of a glass of a mixture, the nature of which was unknown to her". At the same time she admitted some of the symptoms she had previously denied, while continuing to deny others. Upon the conclusion of the trial, the Trial Judge announced an oral decision upon the record which seems not to have been followed by the written decision he then expected to hand down; but there did follow an order of dismissal and the judgment appealed from, apparently predicated upon the oral findings that although the State was negligent, claimant's contributory negligence barred any recovery. From the uncontradicted testimony of Dr. Kessler hereinbefore quoted, it seems too clear to require extended discussion that claimant's repeated, "emphatic" and "vehement" denials of the symptomology of methyl alcohol poisoning effectively contributed to the failure of a proper diagnosis; aided, unhappily enough, by the doctor's impression of claimant — to whom the authorities entrusted some responsibility as a leader — as above the average inmate's intelligence and thus unlikely to pursue the self-defeating course of refusing to give a true history. We disapprove, however, the finding of negligence on the part of the State. The record demonstrates no more than an error of medical judgment for which, under familiar principles, the State cannot be held liable. If, however, negligence in failing to arrive at a correct diagnosis were to be assumed, it would then have to be found that claimant failed to sustain the burden of proving proximate cause, there being no substantial evidence that the State was called upon to direct a medical examination prior to the time of that made by Dr. Kessler and no substantial evidence that a correct diagnosis by Dr. Kessler would have been sufficiently timely to permit effective treatment within the relatively brief critical period necessary therefor. Judgment affirmed, without costs. Gibson, P. J., Herlihy, Aulisi, Staley, Jr., and Gabrielli, JJ., concur in memorandum by Gibson, P. J.